**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 7 |
| THE TRULAND GROUP, INC., *et al.*[1] | ) ) ) | Case No. 14-12766-BFK |
| Debtors. | ) | (Joint Administered Requested) |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING
CHAPTER 7 TRUSTEE TO:  (A) USE CASH COLLATERAL ON AN EMERGENCY
BASIS PENDING A FINAL HEARING; (B) OPERATE THE DEBTORS' BUSINESS ON
A LIMITED BASIS AND MAKE DISBURSEMENTS CONSISTENT WITH THE
BUDGET; (C) PAY CERTAIN PRE-PETITION WAGES; AND
<u>(D) SCHEDULING A FINAL HEARING</u>**

COMES NOW Klinette H. Kindred, chapter 7 trustee ("Trustee"), by her undersigned counsel, and files this motion[2] ("Motion") for the entry of interim and final orders authorizing her to use cash collateral, operate the Debtors' business on a limited basis and make disbursements consistent with the Budget (defined herein), and pay certain pre-petition wages pursuant to 11 U.S.C. §§ 105(a), 361, 363, and 721 and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  A proposed order granting interim relief ("Interim Order") is attached hereto as Exhibit "A."  In support of this Motion, the Trustee represents as follows:

---

[1] The Debtors are the following entities: The Truland Group, Inc., a Virginia corporation, Truland Service Corporation, a Virginia corporation, Snowden River Corporation, a Maryland corporation, Tech, Inc., a Virginia corporation, Truland Systems Corporation, a District of Columbia corporation, Northside Truland Electric, LLC, a Virginia corporation, The Truland Group of Companies, Corp., a Delaware corporation, Pel-Bern Electric Corporation, a Maryland corporation, Truland Walker Seal Transportation, Inc., a Virginia corporation and Blumenthal Kahn Truland Electric, LLC, a Maryland limited liability company.

[2] In accordance with Local Rule 9013-1(G)(1), the Motion and memorandum in support thereof are combined in a single pleading.

H. Jason Gold, Va. Bar No. 19117
Dylan G. Trache, Va. Bar No. 45939
Lauren Friend McKelvey, Va. Bar No. 78813
WILEY REIN LLP
7925 Jones Branch Drive, Suite 6200
McLean, Virginia 22102
(703) 905-2800
*Proposed Counsel to the Chapter 7 Trustee*

## STATEMENT OF RELIEF REQUESTED

1. In accordance with Federal Rule of Bankruptcy Procedure 4001(b)(1)(B), the following is a concise statement of the relief requested:

   a. <u>Parties with Interest in Cash Collateral.</u> Upon information and belief, BMO Harris Bank N.A. ("BMO Harris") claims a security interest in and liens on substantially all of the Debtors' assets, including: (i) all cash on hand; (ii) the proceeds from the Debtors' contracts; and (iii) any other cash collateral as defined in § 363(a) ("Cash Collateral"), with the exception of vehicles owned by the Debtors.

   b. <u>Purposes for the Use of Cash Collateral.</u> The Trustee shall be permitted to use Cash Collateral for general corporate purposes, such as payroll, and operating costs, as well as costs and expenses related to these chapter 7 cases, including accruals for payment of professional fees approved by the Court, all pursuant to the proposed interim budget ("Budget") attached to the proposed Interim Order.

   c. <u>Termination.</u> Pursuant to the Interim Cash Collateral Order, unless extended by the Court or agreement of BMO Harris, the Trustee's use of Cash Collateral shall terminate contemporaneously with the final hearing ("Final Hearing") on the use of cash collateral ("Interim Cash Collateral Period"). At the Final Hearing, the Trustee intends to request that her authority to use Cash Collateral be extended. Interim Order at ¶ 3.

   d. <u>Adequate Protection.</u> BMO Harris is adequately protected by way of an equity cushion and because the Trustee's operation of the Debtors' business will result in the preservation and enhancement of the value of its collateral. Interim Order at ¶ E.

## JURISDICTION AND BACKGROUND

2. On July 22, 2014 (the "Involuntary Petition Date"), certain petitioning creditors filed an involuntary chapter 7 petition in the Greenbelt Division of the Maryland Court against Pel-Bern Electric Corporation ("Pel-Bern") and filed involuntary chapter 7 petitions in the Baltimore Division of the Maryland Court against Blumenthal Kahn Truland Electric, LLC ("BK Truland"), Truland Service Corporation ("Truland Service") and Truland Systems Corporation ("Truland Systems") (collectively, the "Maryland Cases"). These cases have been transferred to this Court.

2

3. On July 23, 2014 (the "EDVA Petition Date"), each of the Debtors filed voluntary petitions under chapter 7 in EDVA. The Trustee has been appointed chapter 7 trustee in each of these cases.

## JURISDICTION

4. This Court has jurisdiction with respect to this Motion pursuant to 28 U.S.C. § 1334(b). The Motion is a core proceeding as defined by 28 U.S.C. § 157(b).

## ASSETS

5. The Debtors' principal assets include the following items: cash, inventory, machinery and equipment, computers, furniture, fixtures, company vehicles, contract and lease rights, and accounts receivable.

## BMO HARRIS LOAN

6. BMO Harris claims to be owed approximately $27 million and asserts that its position is secured by substantially all of the assets of the Debtors with the exception of certain motor vehicles. As of the date of this Motion, the Trustee has not confirmed that BMO Harris holds a perfected security interest or otherwise evaluated the extent, priority or amount of its claims in the cases. The proposed Interim Order does not determine the amount, validity, priority or extent of BMO Harris' alleged liens.

## RELIEF REQUESTED

7. By this Motion, the Trustee seeks the entry of interim and final orders authorizing its use of cash and cash equivalents in which BMO Harris asserts a valid, perfected security interest, pursuant to Section 363(a) of the Bankruptcy Code. The Cash Collateral constitutes all or substantially all of the Debtors' otherwise unrestricted cash. The Trustee requires the use of the Cash Collateral to operate the Debtors' business on a limited basis and liquidate the available

assets for the benefit of creditors. As the Trustee has an immediate and compelling need to use the Cash Collateral, she seeks authority to use Cash Collateral on an interim basis through the date of the final hearing on this Motion. At the final hearing, the Trustee intends to seek continued use of Cash Collateral.

8. BMO Harris is adequately protected as the Trustee's operation of the Debtors' business will result in the preservation and enhancement of the value of its collateral. The Trustee believes and has been informed by numerous parties, including BMO Harris, that the value of the collateral securing BMO Harris' liens exceeds the amount of its liens.

9. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of a motion requesting such use. Therefore the Trustee is first requesting entry of an interim order providing for interim use of Cash Collateral pending the Final Hearing on the Motion.

## ARGUMENT

10. Pursuant to section 363(a) of the Bankruptcy Code, cash collateral is defined as, *inter alia,* cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents, whenever acquired, in which the estate and an entity other than the estate have an interest, and includes the proceeds, products, offspring, rents or profits of property subject to a security interest as provided in section 552(b) of the Bankruptcy Code, whether existing before or after the commencement of a case under the Bankruptcy Code.

11. The Trustee's use of Cash Collateral is appropriate and should be authorized under section 363(c)(2) of the Bankruptcy Code, which provides that the Trustee may use, sell or lease cash collateral if "(A) each entity that has an interest in such cash collateral consents; or

4

(B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).[3]

12. The Trustee's need to use such Cash Collateral is immediate and compelling. Before filing for bankruptcy, the Debtors operated a substantial business, including over 250 construction jobs. The Trustee requires Cash Collateral to, *inter alia,* (i) wind down Debtors' substantial operations, (ii) realize accounts receivables on Debtors' construction jobs worth potentially tens of millions of dollars, (iii) liquidate Debtors' sizable inventory and tangible assets, including vehicles, tools, equipment and materials; (iv) evaluate Debtors' hundreds of contracts; and (v) sell, assign or otherwise dispose of Debtors' construction contracts. Without such authorization, the Trustee will not be able to maximize the value of the estates' assets. The Budget sets forth several expenses that will be required over the next several weeks, including a limited payroll for up to 8 employees. The Budget also includes accruals for professional fees and the Trustee's commission in order to protect the Trustee and her professionals during the Interim Cash Collateral Period. The Budget also authorizes the Trustee, with the consent of BMO Harris to expend additional funds to complete certain contractual obligations of the Debtors which may be required to create additional accounts receivable.

13. The Budget includes and the Trustee requests that the Court approve the payment of pre-petition wages for up to 8 individuals in the approximate amount of $21,000. Courts have consistently permitted post-petition payment of pre-petition obligations where necessary to preserve or enhance the value of a debtor's estate. *See, e.g.*, *Miltenberger v. Logansport & S.W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization

---

[3] The Trustee and BMO Harris have attempted to negotiate a consensual cash collateral order. However, as of the date of this Motion, these efforts have not resulted in an agreement. The Trustee intends to continue her efforts to reach an agreement with BMO Harris prior to the hearing on the Motion.

5

permitted to prevent "stoppage of [indispensable] business relations ..."); *In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999). The Trustee believes that paying pre-petition wages is necessary to retain up to 8 key employees to continue to work for the estate post-petition. These employees are critical to assist the Trustee with (i) accessing and locating documents necessary to complete jobs and to respond to requests from a multitude of parities including general contractors, customers, governmental units and unions, (ii) preparing reports, (iii) collecting accounts receivable, (iv) locating assets and (v) supervising contract completion, among other things. However, the employees will be unlikely to agree to work for the Trustee without repayment of pre-petition wages for approximately a week and a half of work.

14. In order for the Court to authorize the use of cash collateral, it must find that the lender is adequately protected. Adequate protection is determined based on the facts and circumstances of each particular case. *In re Pelham Street Assoc.*, 131 B.R. 260, 263 (Bankr. D.R.I. 1991) (recognizing that "'adequate protection' under the Code is a flexible concept, to be tailored to the particular facts and circumstances of each case"); *In re Karl A. Neise, Inc.*, 16 B.R. 600, 601 (Bankr. S.D. Fla. 1981) (explaining that "[w]hat constitutes adequate protection varies with the facts and circumstances of each particular case"). The principal purpose of adequate protection is to limit a secured creditor's risk that the value of its collateral will decline while being used by the trustee. *In re Delta Resources, Inc.*, 54 F.3d 722, 730 (11th Cir. 1995) (oversecured creditor only entitled to protection from the decline in value of collateral); *In re Grubbs Constr. Co.*, 319 B.R. 698, 711 (Bankr. M.D. Fla. 2005) (instructing that adequate protection should be "fashioned to compensate for the decline in value of the collateral").

15. BMO Harris has a significant equity cushion in the collateral. Additionally, the Trustee's operation of the Debtors' business and wind-down activities will preserve and enhance

Document    Page 7 of 9

BMO Harris' collateral. Indeed, if the Trustee were to simply abandon the Debtors' assets, BMO Harris would likely suffer a significant loss. Accordingly, the Trustee submits that BMO Harris is adequately protected and the Court should authorize the use of cash collateral.

16. Without interim relief, the Trustee will immediately be forced to delay her administration of the estates and likely lose the ability to call back the Debtors' key employees. Because the use of Cash Collateral by the Trustee is necessary to prevent the irreparable harm, the Court should authorize the Trustee's use of Cash Collateral on an interim basis.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court (i) enter an order substantially similar to the order attached hereto as Exhibit "A" authorizing the Trustee to use Cash Collateral on an interim basis consistent with the Budget; (ii) schedule a final hearing on the Motion; (iii) at the Final Hearing, enter an order authorizing the continued use of Cash Collateral on the terms and conditions set forth in the proposed order to be filed by the Trustee with the Court; (iv) authorize the Trustee to pay the pre-petition wages set forth in the Budget; (v) authorize the Trustee to operate the Debtors' business on a limited basis and to make disbursements consistent with the Budget; and (vi) grant such other and further relief as is just and proper.

Respectfully submitted,

KLINETTE H. KINDRED, TRUSTEE

By Counsel

WILEY REIN LLP
7925 Jones Branch Drive, Suite 6200
McLean, Virginia  22102
Telephone: (703) 905-2800
Facsimile: (703) 905-2820


By:     /s/ Dylan G. Trache
         H. Jason Gold, Va. Bar No. 19117
         Dylan G. Trache, Va. Bar No. 45939
         Lauren Friend McKelvey, Va. Bar No. 78813

*Proposed Counsel to the Chapter 7 Trustee*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of August 2014, a copy of the foregoing Motion was delivered by first class mail, postage prepaid, and email to:

>Jack Frankel
>Office of the United States Trustee
>115 South Union Street, Suite 210
>Alexandria, Virginia 22314
>
>Dimitri Karcazes and Danielle Wildern Juhle
>Goldberg Kohn
>55 East Monroe Street, Suite 3300
>Chicago, IL  60603-5792
>*Counsel for BMO Harris Bank, NA*
>
>Jeffrey T. Martin, Jr.
>Henry & O'Donnell, P.C.
>300 North Washington Street, Suite 204
>Alexandria, VA  22314
>*Counsel for BMO Harris Bank, NA*

and by certified mail, return receipt requested to:

>William Downe
>Chief Executive Officer, BMO Financial Group
>111 West Monroe Street
>Chicago, Illinois 60603
>
>Mark F. Furlong
>Group Head, U.S. Personal and Commercial Banking and
>Chief Executive Officer
>BMO Harris Bank N.A.
>111 West Monroe Street
>Chicago, Illinois 60603

and by first class mail, postage prepaid, to the creditors and parties in interest on the attached limited service list, which includes known lienholders, sureties, general contractors and customers of Debtors.[4]

/s/ Dylan G. Trache
Dylan G. Trache

---

[4] Pursuant to Local Rule 5005-1(C)(8), the attached service list is not to be served on each of the parties, but is attached to the original Certificate of Service filed with the Court.